UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANN MARIE DIPONZIO,

                                             Plaintiff,

- vs. -

BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION,

                                             Defendants.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Civil Action No.

Plaintiff Ann Marie DiPonzio ("plaintiff"), by and through her counsel, Burns & Schultz LLP, for her Complaint against defendants Bank of America, N.A. and Bank of America Corporation (collectively "BOA" or "defendants") alleges as follows:

### JURY TRIAL DEMANDED

Plaintiff demands a jury to try all claims triable by a jury.

### PRELIMINARY INTRODUCTION

1.      This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York State Labor Law, 12 N.Y.C.R.R. Part 142 ("Labor Law"), because defendants intentionally failed to pay plaintiff wages, including overtime, for hours plaintiff worked. Plaintiff also brings claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the New York State Human Rights Law, N.Y. Exec. Law, Art. 15 ("HRL"), because plaintiff was intentionally harassed, subjected to a hostile work environment, unlawfully discriminated against during her employment, and terminated from her employment, all based upon her age.

## PARTIES

2.  Plaintiff Ann Marie DiPonzio ("DiPonzio") is a resident of Monroe County, residing at 842 Eastbrook Lane, Rochester, New York, 14618.

3.  Defendants Bank of America, N.A. and Bank of America Corporation are North Carolina corporations. BOA operates offices throughout the United States, including an office in which plaintiff was employed at 20 Wildbriar Road, Suites A & B, Rochester, New York, 14623.

## JURISDICTION AND VENUE

4.  Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. §§ 206, 207, 215, and 216; and 29 U.S.C. §§ 623 and 626. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate plaintiff's claims under state law.

5.  Venue is proper pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE EXHAUSTION

6.  Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). A Notice of Right to Sue was issued by the EEOC on April 25, 2011. Less than ninety (90) days have elapsed since plaintiff's receipt of the Notice of Right to Sue. Copies of the EEOC documents are attached hereto as Exhibit A.

## FACTUAL BACKGROUND

### UNPAID WAGES, MEAL BREAKS, AND OVERTIME

7.  At all times relevant to this complaint, BOA was DiPonzio's employer pursuant to the FLSA and Labor Law.

8.  DiPonzio has over 25 years experience working with home loans and mortgages, including loan origination and processing.

9. In January 2009, BOA hired DiPonzio as a loan originator with BOA's Home Loans & Insurance Department to work in the downtown Rochester, New York branch office, managed by Michael DiDonna.

10. In October 2009, DiPonzio became a sales assistant with BOA's Home Loans & Insurance Department in the downtown Rochester, New York branch office.

11. As a sales assistant, DiPonzio usually began work at 7:00 a.m. and worked until after 5:00 p.m., usually without taking any time for a meal break.

12. DiPonzio was paid a salary as a sales assistant and was explicitly told by BOA management to only record her time from 8:00 a.m. until 5:00 p.m., regardless of when she actually began working or completed work, and to record a one-hour unpaid meal break every day, regardless of whether she took a break or the actual length of her break.

13. Thus, DiPonzio performed ten (10) or more hours of off-the-clock work for BOA each week as a sales assistant. DiPonzio was not compensated for any of this off-the-clock work.

14. DiPonzio was directed and supervised by employees of BOA throughout her employment as a sales assistant. BOA management was usually working with DiPonzio when DiPonzio was performing off-the-clock work.

15. DiPonzio performed this off-the-clock work throughout her employment as a sales assistant with BOA until she was unlawfully terminated on August 27, 2010.

16. Because of this off-the-clock work, DiPonzio worked hundreds of hours without pay as a sales assistant, including hundreds of hours of overtime that should have been paid at one and one-half her regular rate of pay.

## UNLAWFUL AGE DISCRIMINATION

17.     At all times relevant to this complaint, BOA was DiPonzio's employer pursuant to the ADEA and HRL.

18.     In March 2010, BOA acquired Country Wide's Home Loans and home loan processing system and began to integrate Country Wide Home Loan employees with the BOA Home Loans & Insurance Department. This included acquiring the Henrietta, New York branch office of Country Wide's Home Loan Department ("Henrietta office").

19.     In May 2010, BOA appointed a former Country Wide manager, Sheryl Meyer, as the new manager of the consolidated BOA Rochester Home Loans & Insurance Department. Meyer was many years younger than DiPonzio.

20.     Meyer decided to consolidate the physical operation of the downtown Rochester, New York office and the Henrietta office, and move all employees in the Rochester Home Loans & Insurance Department to the Henrietta office. Meyer assured all the employees that no one would lose their jobs as a result of this consolidation.

21.     DiPonzio was one of three sales assistants in the Henrietta office, and the only sales assistant over the age of 50 who reported to Meyer. DiPonzio's date of birth is August 1, 1957.

22.     There were numerous technical difficulties that resulted from converting all existing BOA home loans into the computer system used by the former Country Wide Home Loan Department.

23.     These technical difficulties led to the pending home loans for all of the loan originators and sales assistants in the Henrietta Branch not being processed by already established closing dates, having to redo loan paperwork, and various customer services issues.

24. In response to these customer service issues, DiPonzio began working even longer hours, and constantly staying in contact with the loan officers and customers to ensure that the loans would eventually be completed, even though the customer service issues were beyond her control.

25. DiPonzio received a lot of praise from the loan officers for her diligent efforts, despite the difficulties caused by the computer system.

26. The other sales assistants did not work the additional hours that DiPonzio worked.

27. Despite all of DiPonzio's efforts, Meyer called DiPonzio into her office on July 7, 2010, and told DiPonzio that her performance was inadequate. Meyer placed DiPonzio on written warning with vague descriptions of performance issues. On that same day, Meyer interviewed a 35 year old for a sales assistant position in the Henrietta office.

28. DiPonzio asked Meyer for specific instances of performance problems and she responded by saying generally that two loan officers, Tony Tur and Terri Vasta, had complained about DiPonzio.

29. DiPonzio asked Tur and Vasta about this and they both said that they never complained about DiPonzio's performance. To the contrary, they said that they told Meyer that the computer system, the processors, and the underwriters in Melville, New York were causing excessive customer service complaints and that despite these limitations DiPonzio was doing a great job of managing a very difficult situation.

30. None of the younger sales assistants were placed on written warning.

31. Meyer said that she would arrange for additional training for DiPonzio, which DiPonzio welcomed. Neither Meyer nor BOA ever provided DiPonzio with additional training in July or August 2010.

32. In early-August 2010, Meyer hired the 35 year old for a sales assistant position in the Henrietta branch office. On the same day, Meyer placed DiPonzio on final warning for the same vague "performance issues" that Meyer previously cited.

33. DiPonzio asked about the training that Meyer had offered in July and Meyer responded that DiPonzio did not need training because DiPonzio had been doing the job for "like 30 years."

34. DiPonzio again asked Tur and Vasta if they had any complaints about her performance and they again said that DiPonzio was doing a great job in a very difficult situation.

35. DiPonzio continued to perform her job duties in the same way that she always had without any further comment from Meyer until August 27, 2010, when Meyer pulled DiPonzio aside and told DiPonzio that DiPonzio was fired. DiPonzio asked for a reason and Meyer simply said that DiPonzio's performance was inadequate.

36. When DiPonzio spoke to the outside attorneys and realtors whom she worked with on a daily basis as a sales assistant, they all expressed shock and outrage that she had been fired.

37. Meyer never offered DiPonzio a job change, a job transfer to another loan center or a retail site (of which there were several in Rochester and for which DiPonzio was qualified), additional training, or an explanation about specific performance issues or complaints.

38. None of the younger sales assistants were similarly disciplined or terminated.

39. DiPonzio complained about these acts of age discrimination to BOA but her termination was upheld.

40. BOA's discrimination against DiPonzio caused DiPonzio severe emotional distress, lost wages, lost benefits, and will cost her lost wages and benefits in the future.

## FIRST CAUSE OF ACTION
### (Violations of the FLSA and the Labor Law)

41.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this complaint as if fully set forth and restated here.

42.   BOA willfully and with full knowledge that plaintiff was working over 40 hours each week as a sales assistant, failed to pay plaintiff overtime at a rate of one and one-half plaintiff's regular rate when she worked over 40 hours in week in violation of the FLSA and Labor Law.

43.   BOA willfully failed to accurately record plaintiff's hours as a sales assistant, including meal breaks, in violation of the FLSA and Labor Law.

44.   As a direct and proximate result of BOA's willful violations of the FLSA and the Labor Law, plaintiff has incurred lost wages, including unpaid overtime.

45.   Plaintiff is entitled to recover her lost wages, liquidated damages for BOA's intentional conduct, interest, costs, and attorneys' fees.

**WHEREFORE**, as to the First Cause of Action, plaintiff demands that the Court enter judgment against BOA:

(a)   declaring that the acts and practices complained of herein are in violation of the FLSA and/or Labor Law;

(b)   enjoining and permanently restraining all violations of the FLSA and/or Labor Law;

(c)   directing CDR to pay plaintiff all unpaid wages due to plaintiff;

(d)   directing CDR to pay plaintiff liquidated damages;

(e)   awarding plaintiff such interest as is allowed by law;

(f)   awarding plaintiff her reasonable attorneys' fees and costs; and

(g) granting such other and further relief as the Court deems necessary and proper.

## SECOND CAUSE OF ACTION
**(Harassment, Age Discrimination, and Hostile Work Environment in Violation of the ADEA and the HRL)**

46. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this complaint as if fully set forth and restated here.

47. BOA, through their employees and/or agents, engaged in a continuing pattern of harassment, age discrimination, and created an on-going hostile work environment by subjecting plaintiff to unequal treatment in the workplace, including unlawfully terminating her employment on the basis of her age, in violation of the ADEA and the HRL.

48. BOA's harassment, age discrimination, and hostile work environment towards plaintiff created an intimidating, oppressive work environment that interfered with plaintiff's well-being.

49. BOA's harassment, age discrimination, and hostile work towards plaintiff was sufficiently severe and pervasive to affect the terms and/or conditions of her employment with BOA.

50. BOA failed to comply with its duty to take all reasonable and necessary steps to eliminate harassment, age discrimination, and hostile work environment from the workplace and to prevent it from occurring in the future.

51. As a direct and proximate result of the hostile and offensive work environment perpetrated and maintained by defendants, defendants' willful, knowing, and intentional discrimination against plaintiff, and defendants' failure to protect plaintiff from further harassment, plaintiff was and remains injured and damaged, and she suffered, and continues to suffer, extreme and severe mental, physical and emotional pain, distress, anguish, and

humiliation, loss of enjoyment of life, loss of earnings and benefits, and an inability to obtain comparable employment.

52. As a further and proximate result of defendants' violations of the ADEA and the HRL, plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment with defendant, and has thereby incurred and will continue to incur, legal fees and costs. Plaintiff is entitled to recover attorneys' fees as part of any judgment that is entered in this case.

**WHEREFORE,** as to the Second Cause of Action, plaintiff demands judgment against BOA in an amount to be determined upon the trial of this action, including:

(1) general and compensatory damages;

(2) punitive damages;

(3) reasonable attorneys' fees and costs of this lawsuit;

(4) prejudgment interest;

(5) physical, medical, mental, and emotional damages;

(6) pain and suffering; and

(7) such other relief as this Court deems just and proper.

Dated: June 20, 2011

**BURNS & SCHULTZ LLP**

Andrew M. Burns
Steven G. Carling
First Federal Plaza
28 East Main Street, Suite 900
Rochester, NY 14614
(585) 672-2600

*Attorneys for plaintiff*

# EXHIBIT A

RECEIVED
DEC 29 2010

| **CHARGE OF DISCRIMINATION** BULO | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form.<br>_____New York State Division of Human Rights_____ and EEOC<br>*State or local Agency, if any* | [ ] FEPA<br>[x] EEOC | 525-2011-00304 |

| NAME (Indicate Mr., Ms., Mrs.): | | TELEPHONE (Include Area Code) |
|---|---|---|
| Ann Marie DiPonzio | | (585) 729-3781 |
| STREET ADDRESS: | CITY. STATE AND ZIP CODE | DATE OF BIRTH |
| 842 Eastbrook Lane | Rochester, New York 14618 | August 1, 1957 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code): |
|---|---|---|
| Bank of America | Over 500 | (585) 321-2900 |
| STREET ADDRESS | CITY. STATE AND ZIP CODE | COUNTY |
| 20 Wildbriar Rd, Suites A & B | Rochester, NY 14623 | Monroe, New York |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box (es)* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | EARLIEST (ADEA/EPA)    LATEST (ALL) |
| [ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN | July 2010          8/27/2010 |
| [ ] RETALIATION   [X] AGE   [ ] DISABILITY   [ ] OTHER | [ ] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*

1. Respondent Bank of America is a lending institution that provides a variety of banking and lending services including lending for home loans.

2. I have over 25 years experience working with home loans, including loan origination and processing.

3. In January 2009, Respondent hired me as a Loan Originator with the Home Loans & Insurance Department to work in the Downtown Rochester branch office, managed by Michael DiDonna.

4. In October 2009, I became a sales assistant with Bank of America's Home Loans & Insurance Department in the Downtown Rochester branch office.

5. I was directed and supervised by employees of Bank of America throughout my employment.

6. Bank of America was my employer pursuant to the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* ("ADEA").

7. In March 2010, Bank of America acquired Country Wide's Home Loans and home loan

processing system and began to integrate Country Wide Home Loan employees with the Bank of America Home Loans & Insurance Department. This included acquiring the Henrietta branch office of Country Wide's Home Loan Department.

8. In May 2010, Bank of America appointed a former Country Wide manager, Sheryl Meyer, a 41 year old woman, as the new manager of the consolidated Bank of America Rochester Home Loans & Insurance Department. Meyer decided to consolidate the physical operation of the Downtown Rochester branch and the Henrietta branch, and move all employees in the Rochester Home Loans & Insurance Department to the Henrietta branch office.

9. I was one of only 3 sales assistants in the Henrietta branch office, and I was the only sales assistant over the age of 50 who reported to Meyer.

10. There were numerous technical issues that resulted from converting all existing Bank of America home loans into the computer system used by the former Country Wide Home Loan Department.

11. These technical issues led to pending home loans not being processed by set closing dates, having to redo loan paperwork, and innumerable customer services issues.

12. In response to these customer service issues, I began working even harder, coming in at 7 am instead of 8, working through my lunch, and constantly staying in contact with the Loan Officers and customers to ensure that the loans would eventually be completed.

13. I received a lot of praise from the Loan Officers for my diligent efforts, despite the difficulties caused by the computer system.

14. The other sales assistants did not work the additional hours that I worked.

15. Despite all of my efforts, Meyer called me into her office in July 7, 2010, and told me that my performance was inadequate. Meyer placed me on written warning with vague descriptions of performance issues. This was the same day that Meyer interviewed a 35 year old for a position as sales

assistant in the Henrietta office.

16. I asked Meyer for specific instances of performance problems and she responded by saying generally that two Loan Officers, Tony Tur and Terri Vasta, had complained about me.

17. I asked the Loan Officers and they both said that they never complained about my performance. To the contrary, they both said that they told Meyer that the computer system, the processors, and the underwriters in Melville, New York were causing excessive customer service complaints and that despite these limitations, I was doing a great job of managing a very difficult situation.

18. Neither of the other younger sales assistants were placed on written warning.

19. Meyer said that she would arrange for additional training for me, which I welcomed. But she never followed through on this.

20. In early-August 2010, Meyer hired the 35 year old for a position as a sales assistant in the Henrietta branch office. On the same day, Meyer placed me on final warning for the same vague "performance issues" that Meyer previously cited. I asked about the training that Meyer had offered in July and Meyer responded that I didn't need training because I had been doing the job for "like 30 years."

21. I again asked the Loan Officers if they had any complaints about my performance and they again said that I was doing a great job in a very difficult situation.

22. I continued to perform my job duties in the same way that I always had without any further comments from Meyer until August 27, 2010, when Meyer pulled me aside and told me that I was fired. I asked for a reason and she simply said that my performance was inadequate. She never offered me a job change, a job transfer to another loan center or a retail site, additional training, or an explanation about specific performance issues or complaints.

23. None of the younger sales assistants were disciplined or terminated.

24. As a direct and proximate result of the hostile and offensive work environment perpetrated and maintained by Bank of America and their willful, knowing, and intentional discrimination against me, and their failure to protect me from further harassment, I was and remain injured and damaged, I have lost wages as result of the unlawful termination of my employment, and suffered, and continue to suffer, extreme and severe mental and emotional pain, distress, anguish, and humiliation, and loss of enjoyment of life.

25. I have not filed the same or similar charges with any state or local fair employment practice agency.

| | |
|---|---|
| [x] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | State of New York<br>County of Monroe to wit:<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>/x/ _[signature]_   12/22/2010<br>SIGNATURE OF COMPLAINANT      DATE |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date: 12/22/2010   Charging Party: _[signature]_ | Sworn to and subscribed to before the undersigned notary public in and for said jurisdiction this 22 day of December, 2010.<br>My commission expires 6/23/12.<br>_[signature]_ Notary Public |

JESSICA K. DASH
No. 01DA6189164
Notary Public, State of New York
Qualified in Monroe County
My Commission Expires 06/23/20__

RECEIVED
DEC 29 2010
E.E.O.C. BULO

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Ann Marie DiPonzio<br>842 Eastbrook Lane<br>Rochester, NY 14618 | From: | Buffalo Local Office<br>6 Fountain Plaza<br>Suite 350<br>Buffalo, NY 14202 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2011-00204 | Mary Ann Drabczyk,<br>Investigator | (716) 551-3604 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ ] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Enclosures(s)

John E. Thompson,
Local Office Director

*(Date Mailed)*

cc:
Mark C. Noble
Vice President, Employee Relations Case Manager
BANK OF AMERICA CORPORATION
8015 W Kenton Circle
NC3-191-03-01
Huntersville, NC 28078

Steven G. Carling, Esq.
BURNS & SCHULTZ LLP
ATTORNEYS AT LAW
First Federal Plaza
28 East Main Street, Suite 900
Rochester, NY 14614